

# OFFICE OF THE ATTORNEY GENERAL OF TEXAS

## AUSTIN

GERALD C. MANN
ATTORNEY GENERAL

Honorable Geo. H. Sheppard
Comptroller
Austin, Texas

Dear Mr. Sheppard:

Opinion No. O-5578

Re: Whether or not a lease contract between A. F. and J. A. Martin of Austin, lessors, and L. A. Woods, acting for the Textbook Division of the State Board of Education, as lessee, is a valid lease, and whether or not the same is subject to the provisions of Senate Bill No. 266, 48th Legislature.

Your request for an opinion upon the above subject-matter is as follows:

"I submit for your examination the following memorandum of a contract entered into by and between A. F. and J. A. Martin of Austin, Texas, Lessors, and L. A. Wood, acting for the Textbook Division under a resolution by the State Board of Education authorizing him to act in this capacity as Lessee. The term of this lease is for a period of two years beginning April 15, 1943, and ending April 14, 1945. The lease contract calls for $150 a month rental and is payable out of the Textbook Fund.

"You will notice that this lease contract was made prior to the enactment of the appropriation bill for the ensuing biennium.

Honorable Geo. H. Sheppard - page 2

"I shall thank you to advise this depart-
ment whether this is a valid contract and
whether it is subject to the provisions of
Senate Bill 266. In this connection I call
your attention to Article 2869 and Article
2667 R.C.S., 1925."

Articles 2867, 2868 and 2869 of the Revised
Civil Statutes are as follows:

"Art. 2867. In order to carry out the
provisions of this Act the State Board of
Education shall annually at a meeting desig-
nated by them each year, set apart out of
the available free school fund of the State
an amount sufficient to purchase and distrib-
ute the necessary school books for the use
of the pupils of this State for the scholas-
tic year ensuing.

"Art. 2868. The State textbook fund of
this State shall consist of the fund set
aside by the State Board of Education from
the available school fund as is provided for
in this Act, together with all funds accru-
ing from the sale of disused books and all
moneys derived from the purchase of books
from boards of school trustees by private
individuals, by schools, or from any other
source.

"Art. 2869. The State Board of Educa-
tion shall require from the State Superintend-
ent on July first of each year a report as to
the funds necessary for the purchase and dis-
tribution of other necessary expenses of
school books for the regular school session
of the following year, and said Board of Edu-
cation shall have the power to set apart from
the available school fund the estimated amount
with 25 per cent additional, this additional
sum to be used to meet emergencies or necessi-
ties caused by unusual increase in scholastic
attendance or by unusual and unforeseen ex-

Jonorable Geo. D. Sheppard - page 3

penses and school conditions. Funds transferred in the text book fund shall remain permanently in this fund until expended, and shall not lapse to the State at the close of the fiscal year. The State Superintendent of Public Instruction shall be required to include in the aforementioned report to the State board of Education a statement as to the amount of this fund which is unexpended, and said amount shall be considered by the board in determining the necessary expenditures for textbooks for the following year."

In the general Appropriation Bill of the 47th Legislature there was appropriated for the Textbook Division of the Department of Education, under the head of "Maintenance and Miscellaneous", Item 165, as follows:

"Office and depository supplies, express, drayage, printing, stationery, rent, contingent expense, freight on used books, postage and box rent, telephone, telegraph, messenger service, interest and travel expense,$19,000.00" for the respective fiscal years of the biennium.

Correspondingly, the biennial appropriation of the 48th Legislature for the Textbook Division, Item 87, under "Maintenance and Miscellaneous" is as follows:

"Office and depository supplies, postage, express, drayage, telephone, telegraph, printing, stationery, rent, contingent expense, including freight on used textbooks,..$18,000.00" for the respective fiscal years.

We take it to be that the rentals inquired about come within the above items as "rent".

In Opinion No. O-3427 this department advised you, with respect to the construction and application of Senate Bill No. 266, 48th Legislature, Regular Session, in the course of which opinion we said:

Honorable Geo. H. Sheppard - page 4

"As an aid to you in administering claims under this legislation, we might add further that all rental agreements and leases, which have not expired previously, will automatically terminate on August 31, 1943, the last day of the current biennium. The Supreme Court has ruled that the State cannot be bound upon a lease contract that extends beyond the two-year period covered by the appropriation under which rentals thereunder are payable. Fort Worth Cavalry Club v. Sheppard, 125 Tex. 339, 83 S. W. (2) 660. Therefore, all state departments affected by this legislation must enter into new lease agreements to take effect on September 1, 1943."

Since you have this opinion, obviously you have presented the direct question here under consideration because of doubt as to whether it covers the present situation, or possibly you seek a reconsideration of the matter if it is that broad. The matter is of importance, and in view of the fact that the above-quoted language from our former opinion was voluntarily used, and not in response to a direct question, and in order to remove all dubiety whatever, we have given the matter a new and independent consideration.

Section 7, Article VIII, of the Constitution declares:

"No money shall be drawn from the treasury but in pursuance of specific appropriations made by law; nor shall any appropriation of money be made for a longer term than two years. * * *."

This two-year period begins at the time these appropriations become available, rather than from the date on which the Act becomes legally effective. A general appropriation act becomes effective -- that is, existing law -- upon the day the same is approved by the Governor, (Sec. 39, Art. III, Const.) but such general appropriations usually are available for the biennium, beginning September 1 thereafter, and extend for the permitted two years. They are thus valid and effective law from the

Honorable Geo. H. Sheppard - page 5

date of their passage and approval, according to their terms, but the terms thereof specifically fix the two-year period for expenditure, as above stated.

Fort Worth Cavalry Club v. Sheppard, 83 S. W. (2) 660, by our Supreme Court, cited in our Opinion No. 0-5427, held that a rental lease between the Club and the Adjutant General for armory purposes, for a term of five years, was void as being in contravention of the Constitution. The five-year term, under the contract, began September 1, 1931. The lessee entered into possession of the premises on that date, and thereafter occupied the same for the ensuing six months -- that is, up to March 1, 1932. The State paid the stipulated monthly rentals for the months of September, October, November and December, 1931, and January and February, 1932. These payments were made by warrants drawn by the Comptroller against the appropriation made by the 42d Legislature for the Adjutant General's Department, which appropriation began, of course, September 1, 1931, and ended August 31, 1933. At the time the contract was made there was available under the appropriation, money sufficient to pay the rentals thereunder for the two years covered by such appropriation. After the appropriation for the year ending August 31, 1932, was exhausted, the Governor approved certain deficiencies for the Adjutant General's Department.

Mr. Justice Critz, in writing the opinion for the Supreme Court, said:

"The Attorney General contends that the Adjutant General was without power to make a lease contract for a period of five years, and, therefore, the contract was, and is, illegal. In this connection, the Attorney General contends that there was no law, express or implied, in force at the time this contract was entered into to authorize its making. We are compelled to sustain this contention. * * *.

"In the case at bar the Adjutant General was limited in his right to contract to the amount of his appropriation bill. He was also limited by the term of such appro-

Honorable Geo. H. Sheppard - page 6

priation. When he attempted to go beyond the powers conferred upon him by law, he acted without authority of law, and such act was and is void and does not bind the State. * * *.

"It is sufficient to say that the act was not authorized in the beginning, and the only act of ratification on the part of the Legislature is the appropriation here under consideration. The Legislature had no power to make such appropriation unless at the very time it was made there existed some 'pre-existing law' authorizing the same. It is obvious that no such law then existed."

The present situation is controlled by the decision in that case. Here at the time the Martin-Woods lease was executed there was an existing appropriation from which the rentals could be made, which, however, will expire August 31, 1943. The contract, therefore, extends beyond the available appropriation, and was therefore void, unless some valid pre-existing law authorized it. We quoted in the beginning of this opinion those articles of the statutes which were thought to have any possible bearing upon the subject, and in our opinion they do not constitute pre-existing law necessary to the creation of a liability against the State.

You are therefore respectfully advised that it is the opinion of this department the lease contract under consideration is void. What we have said does not affect the right and duty respecting payment for the period of time prior to September 1, 1943.

Very truly yours

ATTORNEY GENERAL OF TEXAS

APPROVED AUG 31, 1943

Gerald C. Mann

ATTORNEY GENERAL OF TEXAS    By

OS-MR

Ocie Speer
Assistant

